# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | |
|---|---|
| **JON WILLIS** | **CASE NO. 2:19-CV-00165** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **BARRY GRAHAM OIL SERVICE L L C** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Pending before the Court is Wood Group's Motion for Summary Judgment [Doc. No. 134] filed by Third-Party Defendant Wood Group PSN, Inc. ("Wood Group"). Defendant and Third-Party Plaintiff Barry Graham Oil Service, LLC ("BGOS") filed an opposition [Doc. No. 154], and Wood Group filed a reply [Doc. No. 180] to the opposition.

For the following reasons, the Motion is **GRANTED**.

### I.  BACKGROUND AND PROCEDURAL HISTORY

On February 8, 2019, Plaintiff Jon Willis ("Willis") filed suit in this Court on the basis of maritime jurisdiction under 28 U.S.C. § 1333(1) and diversity under 28 U.S.C. § 1332.[1] Willis claims he sustained personal injuries on February 10, 2018, on an offshore platform owned by BGOS.[2] On January 13, 2021, BGOS filed a Third-Party Complaint[3] and on August 3, 2021, filed an Amended Third-Party Complaint.[4] In the Amended Third-Party Complaint, BGOS named the following as Third-Party Defendants: (1) Wood Group, (2) Expeditors and Production Services Company ("EPS"), (3) Shamrock Management, LLC *doing business as* Shamrock Energy

---

[1] [Doc. Nos. 1 ("Original Complaint"), 50 ("First Amended Complaint")]
[2] [Doc. No. 50, ¶ 4]
[3] [Doc. No. 55]
[4] [Doc. No. 79]

Solutions ("Shamrock"), and (4) Aspen Insurance LTD for and on behalf of Lloyd's Underwriter Syndicate No. 4711 ASP ("Aspen") as Third-Party Defendants.[5]

The events leading up to the suit are as follows. The incident occurred while Willis was working on deck of a supply vessel known as the M/V MS. TAMI ("the Tami"), owned by BGOS.[6] Fieldwood Energy ("Fieldwood") was the owner and operator of the fixed platform in the Gulf of Mexico known as the VR-261A platform ("the platform"). Willis was injured when a tagline came off of a grocery box as it was being lowered to the platform on which he was working off of the coast of Louisiana.[7] The facility was located in Block 261 of the Vermillion area on the Outer Continental Shelf ("OCS"), due south of the Louisiana coast.[8] At the time of the incident, the platform was manned by three people: Richard Broussard ("Broussard"), Patrick Cantrell ("Cantrell"), and Willis.[9] Cantrell operated the crane involved in the incident and was an employee of Wood Group.[10] Broussard was the designated person-in-charge ("PIC") on the facility and was employed by Fieldwood. Willis was a production operator and payroll employee of Shamrock.[11]

Willis contends that during a cargo transfer, a grocery box was being lowered from the Tami to the platform by Cantrell.[12] Willis grabbed the tag line and began to use the line to guide the box to its landing spot on the platform.[13] The tag line connected the grocery box to the crane, and the crane was located on the platform.[14] While using the tag line to guide the grocery box, the

---

[5] [Id. at ¶ 1]
[6] [Id. at ¶ 4]
[7] [Doc. No. 50]
[8] [Doc. Nos. 50, ¶¶ 3 and 4, 79, ¶ 3, and 134-5 ("Declaration of Patrick Cantrell")]
[9] [Doc. Nos 134-5, 134-6 ("Deposition of Richard Broussard")]
[10] [Id.]
[11] [Id.]
[12] [Doc. Nos. 50, 79, and 134-5]
[13] [Id.]
[14] [Doc. Nos. 134-5, 134-6, 134-7]

line came loose, and Willis fell onto the platform.[15] Willis contends that the fall resulted in personal injuries.

BGOS contends that Wood Group is liable for the occurrence of the alleged accident "inasmuch as an employee of Wood Group operated the crane that performed the lift of the subject grocery box[,]"[16] and that Wood Group is thus "liable to BGOS for contribution and/or indemnity, to the extent BGOS is found liable to Plaintiff for any damages based on Plaintiff's claims against BGOS in the principal demand."[17] Wood Group contends that BGOS has no claim for tort contribution or indemnity under Louisiana law and that there is no factual evidence of negligence.[18] BGOS argues in response that maritime law applies and that there is a genuine issue of material fact concerning Wood Group's liability for the alleged accident.[19]

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion."

"If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v.*

---

[15] [Doc. Nos. 50, 79, and 134-5]
[16] [Doc. No. 79, ¶ 8]
[17] [Id. at ¶ 9]
[18] [Doc. No. 134-2]
[19] [Doc. No. 154]

3

*Transmaritime, Inc*., 738 F.3d 703, 706 (5th Cir. 2013) (internal quotation marks and citation omitted).; *see also* FED. R. CIV. P. 56(c)(1).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at 248). However, in evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "A non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment, even if the affidavit is self-serving and uncorroborated." *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020) (citations omitted).

Note that "a district court has somewhat greater discretion to consider what weight it will accord the evidence in a bench trial than in a jury trial." *Matter of Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991); *see also Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978) ("If decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved . . . . The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial.").

### B. Analysis

Wood Group contends that the third-party demand against it must be dismissed for two chief reasons: (1) the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331 et. seq., governs Plaintiff's claims against BGOS and applies Louisiana law as surrogate federal law, and, as an alternative basis for summary judgment that, (2) because there is no testimony showing negligence on the part of Cantrell (the crane operator employed by Wood Group). At issue in Wood Group's first argument is whether the third-party claim against Wood Group arises under OCSLA, and, if it does, whether the choice of law provisions in OCSLA require application of Louisiana law or maritime law. Wood Group concedes that if maritime law applies, BGOS's claims against Wood Group in the third-party demand would not be barred as a matter of law. If Louisiana law applies, however, Wood Group contends that Louisiana's pure comparative fault regime bars BGOS's claims for indemnity or contribution. In its second argument, Wood Group contends that there is no factual evidence to support a finding of negligence or fault on the part of Cantrell.

The Court agrees with Wood Group that, as a matter of law, BGOS does not have claims for contribution and/or indemnity. However, because a question of fact still exists as to the comparative fault of Cantrell, BGOS may still be allowed to present evidence of Wood Group's comparative fault at trial even though Wood Group will no longer be a named third-party defendant. The Court will address each argument below.

#### 1. Applicable Law

The choice of law question in the context of torts occurring on offshore platforms requires a multistep analysis. First, the court must determine whether the claims "arise under OCSLA." *See Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013). If that threshold is met, the

court must employ OCSLA's choice of law test to determine whether adjacent state law applies as "surrogate federal law," or whether maritime law "applies of its own force." *See Union Texas Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990). An adjacent issue to the analysis is whether the Admiralty Extension Act, U.S.C. § 30101(a), applies. If the Admiralty Extension Act does apply, then an injury on land caused by a vessel on navigable water will be governed by maritime law. *See Delozier v. S2 Energy Operating, LLC*, 498 F. Supp. 3d 884, 891-92 (E.D. La. 2020). If it does not, then such an injury would be covered by adjacent state law under OCSLA's choice of law provisions so long as the claim also involves traditional maritime activity. *See Hicks v. BP Expl. & Prod., Inc.*, 308 F. Supp. 3d 878 (E.D. La. 2018). The distinction between state and maritime law is important in the instant case because of Louisiana's pure comparative fault regime.

### a. The Outer Continental Shelf Lands Act

OCSLA declares the OCS to be an area of "exclusive federal jurisdiction." *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 479 (1981) (*citing* 43 U.S.C. §1333(a)(1)). OCSLA extends the "Constitution and laws and civil and political jurisdiction of the United States" to the subsoil and seabed of the Outer Continental Shelf and to "artificial islands and fixed structures" built for discovery, extraction, and transportation of minerals. *Id*. at 480 (*citing* 43 U.S.C. § 1333(a)(1)). All law applicable to the OCS is federal law, but to fill the substantial "gaps" in the coverage of federal law, OCSLA borrows the "applicable and not inconsistent" laws of the adjacent States as surrogate federal law. *Id*. (*citing* § 1333(a)(2); *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355–359, 89 S. Ct. 1835, 23 L. Ed. 2d 360 (1969)).

### i. The Claim Arises Under OCSLA

The Fifth Circuit applies a three-element "but for" analysis to determine if a tort cause of action arises under OCSLA: "(1) the facts underlying the complaint occurred on the proper situs; (2) the plaintiff's employment furthered mineral development on the OCS; and (3) the plaintiff's injury would not have occurred but for his employment." *Barker*, 713 F.3d at 213. Willis was injured on a fixed platform located in the OCS adjacent to the coast of Louisiana. OCSLA expressly applies to "artificial islands and fixed structures erected" on the OCS. 43 U.S.C. § 1333(a)(2)(A). Therefore, the first element is satisfied. The second and third elements are also satisfied. Willis sustained his injuries while working as an oilfield production operator in furtherance of Fieldwood's efforts to produce oil and gas.

According to BGOS, the instant case is distinguishable from cases where courts found that OCSLA covered claims against crane operators. *See Henson v. Odyssea Vessels, Inc.*, No. CIV.A. 07-613, 2008 WL 544184 (E.D. La. Feb. 25, 2008) (where the court found that a claim of a plaintiff who worked on a fixed platform off the coast of Louisiana arose under OCSLA.); *see also Debellefeuille v. Vastar Offshore, Inc.*, 139 F. Supp. 2d 821 (S.D. Tex. 2001) (where the plaintiff was injured in a personnel basket transfer from the vessel to a platform and the court found that the claims arose under OCSLA.) BGOS contends that because Willis did not file any claims against Wood Group in the principal demand, there is no claim against Wood Group to be governed by OCSLA. Wood Group cited no authority in support of this argument, and the Court was unable to find any authority supporting such an argument.

Accordingly, the Court finds that Willis's claims arise under OCSLA.

### ii. Louisiana Law Applies

Under OCSLA's choice of law provision, a three-part test determines whether state law applies:

> (1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law.

*Union Texas Petroleum Corp.*, 895 F.2d at 1047. Here, the first and third parts of the test are clearly satisfied. The controversy took place on an artificial structure located in the OCS of Louisiana. Therefore, the first part of the test is satisfied because the controversy arose on a situs explicitly covered by OCSLA.

Additionally, Louisiana law is not inconsistent with federal law. The Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 905(b), sets out a loss allocation scheme based on the rule of joint and several liability. While it could be argued that Louisiana's scheme of comparative fault is inconsistent with LHWCA's scheme allocating the costs of accident injuries, the Fifth Circuit has rejected that argument. In *Fontenot v. Dual Drilling Co.*, 179 F.3d 969 (5th Cir. 1999), the Fifth Circuit noted that:

> Obviously, it is not inconsistent with OCSLA or LHWCA for Louisiana to impose third-party liability; § 933 [of LHWCA] expressly contemplates such an external law. If the scope of the third-party liability, as well as defenses to it, are established by state law, state law governs the question of whether a proportionate-liability rule applies. *Cf. Ferri v. Ackerman,* 444 U.S. 193, 198, (1979) ("[W]hen state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state law is in conflict with federal law." (citing U.S. Const. art. VI, cl. 2)). More importantly, however, the proportionate-liability scheme imposed by Louisiana law cannot be *inconsistent* with federal law because there would be no third-party cause of action in this case had Louisiana not provided one.

at 976 (emphasis in original). The court also noted that § 905 (b) of LHWCA could not be inconsistent with Louisiana law because § 905(b) involves negligence or harm caused by a vessel. *Id*. (Distinguishing the facts of *Fontenot* from *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256 (1979) because *Edmonds* involved a third-party cause of action "created by § 905(b) involving a vessel.").

Additionally, even if Louisiana law were inconsistent with § 905(b) of LHWCA, § 905(b) does not apply to this case because there is no basis for admiralty jurisdiction or the application of general maritime law. *See Dupre v. Palfinger Marine USA Inc.*, No. 6:20-CV-00756, 2022 WL 885867, at *2 (W.D. La. Mar. 24, 2022) ("A Section 905(b) claim is 'limited to maritime torts' and is only cognizable in admiralty; accordingly, maritime law must apply for Plaintiffs to properly bring a section 905(b) action against [defendant]. Maritime law does not apply—and, hence, a section 905(b) claim is not cognizable—if state law applies through OCSLA.") The application of state law through OCSLA is discussed below.

### 1) Maritime Law Does Not Apply of Its Own Force

For maritime law to apply "of its own force," there must be both (1) maritime location and (2) a connection to traditional maritime activity. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995); *see also Petrobras Am., Inc. v. Vicinay Cadenas, S.A.*, 815 F.3d 211 (5th Cir.), *order clarified on reh'g,* 829 F.3d 770 (5th Cir. 2016).

#### i. The Location Prong of *Grubart* is Not Satisfied

The location prong is satisfied if either 1) a tort occurred on navigable water, or 2) an injury occurred on land that was caused by a vessel on navigable water. *Grubart*, 513 U.S. at 553. The Admiralty Extension Act states that the admiralty and maritime jurisdiction of the United States "extends to and includes cases of injury or damage, to person or property, caused by a vessel on

navigable waters, even though the injury or damage is done or consummated on land." U.S.C. 46 § 30101(a). The Admiralty Extension Act is meant to apply to the vessel and her appurtenances "and does not include those performing actions for the vessel." *Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 493 (5th Cir. 2002); *quoting Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*, 183 F.3d 453 (5th Cir. 1999). A grocery box is considered an appurtenance of the vessel. *See Dahlen* 281 F.3d, at 494 (5th Cir. 2002) (where the court was discussing *Erogov*, 183. F.3d at 456 and its requirement of a defect in an appurtenance and stated "What is alleged in the present case is not a defect in the grocery box but in the manner in which groceries were loaded into the box. *Egorov* clearly indicates that the Extension Act should not apply to such a case.")

In *Delozier*, 498 F. Supp. 3d 884, the plaintiff sustained injuries on a platform due to alleged negligence on the part of a vessel's crew. Rejecting application of the Admiralty Extension Act, the court held:

> In line with Supreme Court precedent, the Fifth Circuit has held "the Extension Act is meant to apply to the vessel and her appurtenances 'and does not include those performing actions for the vessel.'" "The vessel or its defective appurtenances must be the proximate cause of the accident." The alleged negligence in the instant case is Dauzat's operation of the M/V MISS MICHELLE, not defects in the vessel or its appurtenances. The location prong of the admiralty jurisdiction inquiry is not satisfied and general maritime law does not apply.

*Delozier*, 498 F.Supp.3d at 891-92 (quoting *Dahlen*, 281 F.3d at 494, and *Margin v. Sea-Land Servs., Inc.*, 812 F.2d 973, 975 (5th Cir. 1987)). Wood Group cites *Delozier* to support its argument that Willis's allegations of negligence by the Tami crew do not invoke the Extension Act, and do not satisfy the location requirement needed for admiralty jurisdiction. Wood Group fails to mention that in the principal demand, Willis asserts that the tag line "was not strong enough and

10

broke off."[20] This is arguably an assertion that a defective appurtenance of the Tami was the proximate cause of Willis's injuries.

The issue is that, in its third-party demand against Wood Group, BGOS does not claim that the Tami itself or a defect in one of her appurtenances caused an injury on the platform for which Wood Group could be liable. In the third-party demand, BGOS contends that Wood group is liable because "the grocery box was in the complete custody and control of the crane operator, whose negligent actions caused and/or contributed to the occurrence of the alleged accident," and that the negligent conduct included "the failure to properly control the cargo while it was in [Cantrell's] complete custody and control, and the failure to properly position the cargo onto the platform [required] Plaintiff to exert more force on the tagline than should have been necessary in order to attempt to properly position the cargo."[21] BGOS argues further in the third-party demand that Wood Group is liable to BGOS for contribution and/or indemnity, "to the extent that BGOS is found liable to Plaintiff for any damages based on Plaintiff's claims against BGOS in the principal demand."[22] Nowhere in the third party demand against Wood Group does BGOS claim that the tag line or grocery box was defective.

Choice of laws in tort matters is determined separately with respect to each issue. *Marathon Pipe Line Co. v. Drilling Rig Rowan/Odessa*, 761 F.2d 229, 234–35 (5th Cir.1985). In *Marathon*, maritime law applied to the original tort, but the court applied Louisiana law to the claims of a third-party demand seeking indemnity. The court noted that:

> The sovereignty of maritime over the original tort does not necessarily make that body of law control [the third-party defendant's] liability to [the third-party plaintiff]. Logic and consistency point in the direction of using a single doctrine to cover

---

[20] [Doc. No. 50, ¶ 4]
[21] [Doc. No. 79, ¶ 8]
[22] [Doc. No. 79, ¶ 8]

11

> all aspects of these interrelated claims. But statutes may dictate departure from neat doctrinal symmetry.

*Id*. at 234. Because OCSLA's choice of law analysis applied to the third-party demand, the laws of Louisiana as the adjacent state applied. *Id*. at 234-35.

BGOS cites to *Debellefeuille* and *Henson* to support its argument that maritime law applies. In each of these cases, the courts applied maritime law to injury claims by platform workers. In *Henson*, the plaintiff alleged that he was "violently slammed into the cluttered deck" of a waiting vessel and that the vessel was operating in rough seas. *Henson*, WL 544184 at *1. In *Debellefeuille*, the plaintiff was aboard a vessel and preparing to be transferred by a personnel basket to an offshore platform. *Debellefeuille*, 139 F. Supp. 2d at 822. During the ensuing transfer, the plaintiff was allegedly injured when his basket struck a different metal basket on board another vessel. *Id*.

Here, the underlying tort is the tag line coming loose, and Willis falling onto the platform. Maritime law arguably could apply to the underlying tort because Willis alleges that the tag line was "not strong enough." The third-party demand against Wood Group does not contain any allegations of defective appurtenances. Rather, it only asserts that Cantrell negligently operated the crane. The Fifth Circuit has made clear that the Admiralty Extension Act does not apply when the source of harm is a crewmate performing actions for the vessel. The negligence of Cantrell is the only source of harm in BGOS's third-party demand against Wood Group. Additionally, the instant case is distinguishable from *Debellefeuille* and *Henson* because in those cases the injuries occurred on a vessel rather than on the fixed platform itself. Therefore, the location prong of the *Grubart* test is not satisfied, and OCSLA's choice of law provisions provide that Louisiana law controls the claims of BGOS against Wood Group.

### ii. The Traditional Maritime Activity Prong of *Grubart* is Not Satisfied

Although the Court finds that the location prong is not satisfied, the Court will nonetheless examine whether the second prong of the *Grubart* test is satisfied. In *Hicks*, 308 F. Supp. 3d 878, the court held that an injury to a platform worker during a personnel basket transfer between an offshore platform and a vessel in navigable waters did not satisfy the traditional maritime activity prong of *Grubart*. The *Hicks* court noted that:

> Fixed drilling platforms do not exist for any purpose related to traditional maritime navigation or commerce. Indeed, they are not even suggestive of traditional maritime affairs. Rather, offshore platforms exist solely to obtain minerals from the OCS in the Gulf of Mexico. Exploration and development of the OCS are not themselves maritime commerce, and there is nothing inherently maritime about the tasks performed by offshore platform workers. Moreover, to the extent that maritime activities may surround personnel basket transfers to and from offshore platforms, any connection to maritime law is eclipsed by their connection to the development of the Outer Continental Shelf.

*Id*. at 890 (internal citations and quotes omitted). Because the activities performed on offshore platforms by platform workers fell outside the purview of maritime navigational or commercial activities, the injuries to platform workers during personnel basket transfers on offshore platforms did not relate to traditional maritime activity. *Id*. As a result, the plaintiffs' tort claims were not governed by federal maritime law. *Id*. at 891.

Here, Willis was a platform worker and was injured when he fell onto an offshore platform. These events do not bear a substantial relation to traditional maritime activity, nor do they pose a potential disruption to maritime commerce. Accordingly, the injury to Willis fails to satisfy the second part of the *Grubart* test for admiralty jurisdiction – a connection to traditional maritime activity.

## 2. Louisiana Law Precludes BGOS's Claims for Contribution and/or Indemnity

The 1996 amendments of Louisiana Civil Code Articles 2323 and 2324 established a system of pure comparative fault and abolished solidary liability among non-intentional tortfeasors. *Dumas v. State ex rel. Dep't of Culture, Recreation & Tourism*, 2002-0563 (La. 10/15/02), 828 So. 2d 530, 535. As amended, Articles 2323 and 2324 "clearly and unambiguously provide[] that comparative fault principles apply in any action for damages and apply to any claim asserted under any law or legal doctrine of theory of liability." *Thompson v. Winn-Dixie Montgomery, Inc.*, 2015-0477, (La. 10/14/15), 181 So. 3d 656, 664. Each non-intentional tortfeasor is liable only for his share of fault, which is to be quantified by the court or jury pursuant to Article 2323. *Snyder v. Asercion*, No. CIV.A. 13-4752, 2013 WL 6004052, at *4 (E.D. La. Nov. 13, 2013).

In *Nat'l R.R. Passenger Corp. v. Textron, Inc.*, No. CIV.A. 11-1507, 2013 WL 139809 (E.D. La. Jan. 10, 2013) the court noted that the introduction of pure comparative fault in Louisiana eliminated the right of contribution among non-intentional tortfeasors. That court held:

> Together, these Articles eliminate the need to seek contribution for another tortfeasor's portion of the plaintiff's damages because tortfeasors may only be held responsible for their percentage of fault. Consequently, the right of contribution among non-intentional tortfeasors "has disappeared since it is no longer necessary."

*Id*. at * 3 (quoting *Dumas*, 828 So. 2d at 538). Thus, if judgment is entered in favor of a plaintiff, third-party plaintiffs can only be liable for their own degree of fault. *Id*. Accordingly, the court found that there was no legal basis for contribution.

Here, Louisiana law applies. If a judgment is entered in favor of Willis against BGOS, BGOS could only be liable for its own degree of fault. Therefore, BGOS has no basis for tort contribution against Wood Group as a matter of law because each can only be held liable for its own degree of fault.

In *Snyder*, 2013 WL 6004052, the court noted that the advent of pure comparative fault in Louisiana limited the right to seek tort indemnity to a certain set of limited situations. It held:

> [T]he Louisiana Supreme Court in *Dumas* did not hold that the amendment of the comparative fault articles eliminated the right to seek indemnification. This is because indemnity is based on the concept of unjust enrichment and "may lie when one party discharges a liability which another rightfully should have assumed." Except in situations where there is an express contractual provision, tort "indemnity arises only where the liability of the person seeking indemnification is solely constructive or derivative." Accordingly, if the fault alleged against the would-be indemnitee is actual or active, tort indemnity is unavailable.

*Snyder*, 2013 WL 6004052, at *4 (internal citations omitted). Thus, to qualify for indemnity, a party must be free of actual fault. *See Fucich Contracting, Inc. v. Shread-Kuyrkendall & Assocs., Inc.*, No. CV 18-2885, 2019 WL 6877646, at *8 (E.D. La. Dec. 17, 2019). Tort indemnity is unavailable if "the fault alleged against the would-be indemnitee is actual or active." *Nat'l RR*, 2013 WL 139809, at *3.

Here, Willis contends that BGOS is liable due to the negligence of the crew of the Tami. Specifically, Willis alleges that the crew failed to properly inspect and secure the tag line on the grocery box, and the training and implementation of procedures by BGOS management was inadequate. Willis's allegation pertains to actual and affirmative conduct of BGOS. Recovery by Willis against BGOS would not be solely constructive or derivative. Therefore, BGOS has no legal basis for tort indemnity against Wood Group as a matter of law.

### 3. There Still Exists a Question of Fact as to Whether Wood Group can be Found to be Comparatively Liable for a Portion of Willis's Damages

As an alternative basis for summary judgment, Wood Group argues that summary judgment is appropriate because there is no factual evidence of negligent conduct by Cantrell. In support, Wood Group cites *Blacklege v. Font,* 06-1092 (La. App. 1st Cir. 3/23/07), 960 So.2d 99, 102 where the court stated that "[a]n issue of negligence or fault can be decided on a motion for

summary judgment, provided that the evidence leaves no relevant, genuine issue of fact, and reasonable minds must inevitably conclude that the mover is entitled to judgment based on the facts before the court." BGOS argues in response that expert witness Robert Chris Broussard's report implicates Cantrell for being responsible for all phases of the subject lifting operation, including "ensuring that all rigging was inspected prior to the lift being conducted. Plaintiff claims that the tagline that allegedly came off the grocery box at issue was neither properly attached to the grocery box nor properly inspected before the lifting operation."[23]

The Court agrees with BGOS on this point. Expert testimony can serve as the basis for establishing the existence of genuine issues of material fact, which, in turn, precludes summary judgment. *See Operaciones Tecnicas Marinas, S.A.S. v. Diversified Marine Services, L.L.C.*, 658 Fed.Appx. 732 (5th Cir. 2016). Here, the expert opinion of Broussard creates a genuine issue concerning the potential negligence of Wood Group through its employee who operated the crane during the lift that allegedly resulted in the Plaintiff's injury. Because a genuine issue of material fact as to the potential negligence of Wood Group remains, summary judgment is inappropriate on the basis of a lack of evidentiary support.

Although the Court agrees with Wood Group that BGOS does not have claims against Wood Group for contribution and/or indemnity as a matter of law, the Court finds that there still exists a genuine issue of material fact as to whether Wood Group can be allocated a portion of fault for the underlying accident. Therefore, at trial, although Wood Group will no longer be a third-party defendant, BGOS may still be able to present evidence concerning Wood Group's contributory negligence on part of Cantrell.

---

[23] [Doc. No. 154 (citing Doc. No. 50, ¶¶ 4 and 6)]

### III. CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Wood Group's Motion for Summary Judgment [Doc. No. 134] is **GRANTED**.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that any claim set forth in the Amended Third-Party Complaint [Doc. No 79] by BGOS against Wood Group is **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 20th day of October 2022.

Terry A. Doughty
United States District Judge