## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

JON WILLIS                                CASE NO.  2:19-CV-00165

VERSUS                                    JUDGE TERRY A. DOUGHTY

BARRY GRAHAM OIL SERVICE L L C            MAGISTRATE JUDGE KAY

### MEMORANDUM RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 142] filed by Defendant and Third-Party Defendant Expeditors & Production Services Company ("EPS"). Defendant and Third-Party Plaintiff Barry Graham Oil Service, LLC ("BGOS") filed an Opposition [Doc. No. 172], and EPS filed a Reply [Doc. No. 187] to the Opposition.

For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.      BACKGROUND AND PROCEDURAL HISTORY

On February 8, 2019, Plaintiff Jon Willis ("Plaintiff") filed suit in this Court on the basis of maritime jurisdiction under 28 U.S.C. § 1333(1) and diversity under 28 U.S.C. § 1332.[1] Plaintiff claims he sustained personal injuries on February 10, 2018 on an offshore platform owned by BGOS.[2] On January 13, 2021, BGOS filed a Third-Party Complaint[3] and on August 3, 2021 filed an Amended Third-Party Complaint.[4] In the Amended Third-Party Complaint, BGOS named Wood Group, EPS, Shamrock Management, LLC *doing business as* Shamrock Energy Solutions ("Shamrock"), and Aspen Insurance LTD for and on behalf of Lloyd's Underwriter Syndicate No. 4711 ASP ("Aspen") as Third-Party Defendants.[5]

---

[1] [Doc. Nos. 1 ("Original Complaint"), 50 ("First Amended Complaint")]
[2] [Doc. No. 50, ¶ 4]
[3] [Doc. No. 55]
[4] [Doc. No. 79]
[5] [Id. at ¶ 1]

The events leading up to the suit are as follows. Plaintiff was injured when a tagline came off of a grocery box as it was being lowered onto a platform on which he was working off of the coast of Louisiana.[6] Plaintiff grabbed the tagline and began to use it to guide the grocery box to its landing spot on the platform.[7] Plaintiff contends that the tagline came loose because it was not tied securely to the grocery box but instead was looped over/around a top handle on the grocery box.[8] The incident occurred while Plaintiff was working on deck of the M/V MS. TAMI ("the Tami"), a supply vessel owned by BGOS.[9] Fieldwood Energy ("Fieldwood") was the owner and operator of the fixed platform in the Gulf of Mexico known as the VR-261A platform ("the platform").[10] The platform is an oil and gas production platform situated in federal waters in the Gulf of Mexico approximately 100 miles off the coast of Louisiana.[11]

EPS owned and maintained a dock facility located in Cameron, Louisiana.[12] Part of the work conducted at the facility is the loading and unloading of vessels such as the Tami.[13] EPS provided these services to Fieldwood pursuant to a Master Service Contract ("MSC") between Fieldwood and EPS (the "Fieldwood/EPS MSC"). The day before the subject incident, EPS loaded the grocery box involved in the incident from its dock onto the Tami.[14] BGOS inspected the cargo once it was loaded onto the Tami and executed a cargo manifest[15] acknowledging it had care, custody, and control of the cargo.[16] The Tami made several stops to other platforms between the

---

[6] [Doc. No. 50]
[7] [Doc. Nos. 50; 79]
[8] [Doc. No. 31-7, p. 2]
[9] [Id. at ¶ 4]
[10] [Doc. No. 1, p. 2]
[11] [Doc. No. 142-8 (Deposition of Patrick Cantrell), p. 3]
[12] [Doc. No. 142-1, p. 2]
[13] [Doc. No. 142-6 (Declaration of Mike Pontiff), ¶ 4]
[14] [Doc. Nos. 142-10 (Declaration of J. Friar); 142-15 (Declaration of C. Jordan Broussard); 142-9; and 142-11 (Deposition of BGOS), p. 2]
[15] [Doc. No. 142-9]
[16] [Doc. Nos. 142-11, pp. 8-10, 13; 142-6, ¶ 11]

time it left EPS's loading facility and the time it arrived at the platform where the subject incident occurred.[17]

BGOS contends that, to the extent that Plaintiff claims the alleged accident occurred as a result of the tagline not being properly secured and tied to the subject grocery box, EPS is liable for "affixing the tagline to a point on the grocery box from which the tagline could easily slip off or otherwise become detached[,]" and that EPS is thus "liable to BGOS for contribution and/or indemnity, to the extent BGOS is found liable to Plaintiff for any damages based on Plaintiff's claims against BGOS in the principal demand."[18] EPS contends that there is no genuine issue of material fact as to EPS's negligence because: it owed no legal duty to Plaintiff after BGOS took custody and control over the grocery box; it had no control over the work conducted by Plaintiff; even if it did have a duty to Plaintiff, there is no evidence it breached that duty; and because it is not liable for the actions of the independent contractors hired by Fieldwood involved in the subject incident.[19] In the alternative, EPS contends that Louisiana law applies to Plaintiff's claims and that, under Louisiana law, BGOS has no claim for tort contribution/indemnity. In response, BGOS contends that there is an issue of material fact with respect to EPS's negligence and that maritime law applies to Plaintiff 's claims.

## II.    LAW AND ANALYSIS

### A.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no

---

[17] [Doc. Nos. 142-11, pp. 29, 32-36; 142-14 (BGOS Boat Logs)]
[18] [Doc. No. 79, ¶¶ 7, 9]
[19] [Doc. No. 142-2, p. 7]

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion."

"If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (internal quotation marks and citation omitted).; *see also* FED. R. CIV. P. 56(c)(1).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at 248). However, in evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "A non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment, even if the affidavit is self-serving and uncorroborated." *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020) (citations omitted).

Note that "a district court has somewhat greater discretion to consider what weight it will accord the evidence in a bench trial than in a jury trial." *Matter of Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991); *see also Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978) ("If decision is to be reached by the court, and there are no issues of witness credibility, the court may

conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved . . . . The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial.").

### B.  Analysis

EPS contends that the third-party demand against it must be dismissed for two reasons: 1) there is no genuine issue of material fact as to its negligence, and 2) under Louisiana law BGOS has no claim for tort contribution/indemnity. In its first argument, EPS contends that once it loaded the grocery box onto the Tami, it owed no duty to Plaintiff. In the alternative, EPS contends that even if it did owe a duty to Plaintiff, there is no evidence that EPS breached its duty. EPS adopts Wood Group's argument that Louisiana law applies and forecloses any claim for tort contribution/indemnity.[20] BGOS contends that Plaintiff sued EPS under general maritime law; however, the Court has previously concluded[21] that Plaintiff's claim arises under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §1349(b). At issue in EPS's second argument is whether the choice of law provisions in OCSLA require application of Louisiana law or maritime law. If maritime law applies, BGOS's claims against EPS in the third-party demand would not be barred as a matter of law. If Louisiana law applies, however, Louisiana's pure comparative fault regime bars BGOS's claims for tort contribution/indemnity.

The Court agrees with EPS that BGOS has no valid claim for tort contribution/indemnity. The Court agrees with BGOS that there exists a genuine issue of material fact as to whether EPS acted negligently.

---

[20] *See* [Doc. Nos. 134 (Wood Group's Motion for Summary Judgment); and 204 (The Court's Memorandum Ruling granting Wood Group's Motion for Summary Judgment)]
[21] *See* [Doc. No. 204]

### 1. Applicable Law

The choice of law question in the context of torts occurring on offshore platforms requires a multistep analysis. First, the court must determine whether the claims "arise under OCSLA." *See Barker v. Hercules Offshore, Inc*., 713 F.3d 208, 213 (5th Cir. 2013). If that threshold is met, the court must employ OCSLA's choice of law test to determine whether adjacent state law applies as "surrogate federal law," or whether maritime law "applies of its own force." *See Union Texas Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990). An adjacent issue to the analysis is whether the Admiralty Extension Act, U.S.C. § 30101(a), applies. If the Admiralty Extension Act does apply, then an injury on land caused by a vessel on navigable water will be governed by maritime law. *See Delozier v. S2 Energy Operating, LLC*, 498 F. Supp. 3d 884, 891-92 (E.D. La. 2020). If it does not, then such an injury would be covered by adjacent state law under OCSLA's choice of law provisions so long as the claim also involves traditional maritime activity. *See Hicks v. BP Expl. & Prod., Inc.*, 308 F. Supp. 3d 878 (E.D. La. 2018). The distinction between state and maritime law is important in the instant case because of Louisiana's pure comparative fault regime.

### a. The Outer Continental Shelf Lands Act

OCSLA declares the OCS to be an area of "exclusive federal jurisdiction." *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 479 (1981) (*citing* 43 U.S.C. §1333(a)(1)). OCSLA extends the "Constitution and laws and civil and political jurisdiction of the United States" to the subsoil and seabed of the Outer Continental Shelf and to "artificial islands and fixed structures" built for discovery, extraction, and transportation of minerals. *Id*. at 480 (*citing* 43 U.S.C. § 1333(a)(1)). All law applicable to the OCS is federal law, but to fill the substantial "gaps" in the coverage of federal law, OCSLA borrows the "applicable and not inconsistent" laws of the adjacent states as

6

surrogate federal law. *Id.* (*citing* § 1333(a)(2); *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355–59 (1969)).

### i.   The Claim Arises Under OCSLA

The Fifth Circuit applies a three-element "but for" analysis to determine if a tort cause of action arises under OCSLA: "(1) the facts underlying the complaint occurred on the proper situs; (2) the plaintiff's employment furthered mineral development on the OCS; and (3) the plaintiff's injury would not have occurred but for his employment." *Barker*, 713 F.3d at 213. Plaintiff was injured on a fixed platform located in the OCS adjacent to the coast of Louisiana. OCSLA expressly applies to "artificial islands and fixed structures erected" on the OCS. 43 U.S.C. § 1333(a)(2)(A). Therefore, the first element is satisfied. The second and third elements are also satisfied. Plaintiff sustained his injuries while working as an oilfield production operator in furtherance of Fieldwood's efforts to produce oil and gas.

BGOS contends that Plaintiff sued EPS under general maritime law. This contention is misplaced. In the Amended Complaint, Plaintiff states that "[j]urisdiction in this Court exists pursuant to [OCSLA], 43 U.S.C. § 1349(b), as Plaintiff was injured while working as a platform operator off the coast of Louisiana on the Outer Continental Shelf on Fieldwood['s] platform[.]" The Court previously determined that OCSLA applied to Plaintiff's claims.[22] Accordingly, Plaintiff's claim arises under OCSLA.

### ii.   Louisiana Law Applies

The Court previously determined that Louisiana law applies to the third-party claims of BGOS against Wood Group. *See Id.* at *6. In its opposition, BGOS cites to *Couch v. Cro-Marine Transp., Inc.*, 44 F.3d 319 (5th Cir. 1995) to support its argument that maritime law applies. *Couch*,

---

[22] *See* [Doc. No. 204, p. 7]

however, is distinguishable from the instant case. In *Couch*, the plaintiff sued under general maritime jurisdiction. *Id*. at 324-325. OCSLA's choice of law provisions were therefore never at issue in *Couch*. Here, OCSLA's choice of law provision applies Louisiana law as surrogate law because maritime law does not apply of its own force.[23]

### b. Louisiana Law Precludes BGOS's Claims for Contribution and/or Indemnity

The 1996 amendments of Louisiana Civil Code Articles 2323 and 2324 established a system of pure comparative fault and abolished solidary liability among non-intentional tortfeasors. *Dumas v. State ex rel. Dep't of Culture, Recreation & Tourism*, 2002-0563 (La. 10/15/02), 828 So. 2d 530, 535. The language of Articles 2323 and 2324 clearly and unambiguously provides that comparative fault principles apply in "any action for damages" and apply to "any claim" asserted under "any law or legal doctrine or theory of liability." *Thompson v. Winn-Dixie Montgomery, Inc.*, 2015-0477, (La. 10/14/15), 181 So. 3d 656, 664. Each non-intentional tortfeasor is liable only for his share of fault, which is to be quantified by the court or jury pursuant to Article 2323. *Snyder v. Asercion*, No. CIV.A. 13-4752, 2013 WL 6004052, at *4 (E.D. La. Nov. 13, 2013).

As the Court previously noted, BGOS has no claim for tort contribution because Louisiana law applies.[24] If a judgment is entered in favor of Plaintiff against BGOS, BGOS could only be liable for its own degree of fault. Therefore, BGOS has no basis for tort contribution against EPS as a matter of law because each can only be held liable for its own degree of fault.

---

[23] *See* [Doc. No. 204, pp. 9-13 (where the Court noted that there was neither maritime location nor traditional maritime activity in the instant case with respect to the third-party claims.); *citing Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995); *Delozier, 498 F. Supp. 3d 884*; and *Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 493 (5th Cir. 2002).]
[24] *See* [Doc. No. 204, pp. 14-15]

In *Snyder*, 2013 WL 6004052, the court noted that the advent of pure comparative fault in Louisiana limited the right to seek tort indemnity to a certain set of limited situations. It held:

> [T]he Louisiana Supreme Court in *Dumas* did not hold that the amendment of the comparative fault articles eliminated the right to seek indemnification. This is because indemnity is based on the concept of unjust enrichment and "may lie when one party discharges a liability which another rightfully should have assumed." Except in situations where there is an express contractual provision, tort "indemnity arises only where the liability of the person seeking indemnification is solely constructive or derivative." Accordingly, if the fault alleged against the would-be indemnitee is actual or active, tort indemnity is unavailable.

*Id*. at *4 (internal citations omitted).  Thus, to qualify for indemnity, a party must be free of actual fault. *Fucich Contracting, Inc. v. Shread-Kuyrkendall & Assocs., Inc.*, No. CV 18-2885, 2019 WL 6877646, at *8 (E.D. La. Dec. 17, 2019). Tort indemnity is unavailable if "the fault alleged against the would-be indemnitee is actual or active." *Nat'l R.R. Passenger Corp. v. Textron, Inc.*, No. CIV.A. 11-1507, 2013 WL 139809, at *3 (E.D. La. Jan. 10, 2013).

Here, Plaintiff contends that BGOS is liable due to the negligence of the crew of the Tami. Specifically, Plaintiff alleges that the crew of the Tami failed to properly inspect and secure the tagline on the grocery box and that the training and implementation of procedures by BGOS management was inadequate. Plaintiff's allegation pertains to actual and affirmative conduct of BGOS. Recovery by Plaintiff against BGOS would not be solely constructive or derivative. Therefore, BGOS has no legal basis for tort indemnity against EPS as a matter of law.

## 2.  Louisiana Negligence Law

As discussed above, Louisiana law applies. In Louisiana, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. C.C. Art. 2315(A). Louisiana law employs a "duty-risk analysis" to determine whether to impose liability. "Under the analysis, a plaintiff must prove five (5) separate elements: (1) the defendant had a duty

to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages." *Christy v. McCalla*, 2011-0366 (La. 12/6/11), 79 So. 3d 293, 299. A plaintiff must prove all five elements of his claim to succeed. The issue of whether the defendant owes a duty is a threshold question and is a question of law. *McCarroll v. Wood Grp, Mgmt. Servs., Inc.*, 561 F. App'x 407, 410 (5th Cir. 2014).

### a. Negligence Claim Against EPS

In the Amended Complaint,[25] Plaintiff alleges that EPS was negligent for failing to properly train its employees; failing to have appropriate procedures in place to ensure that taglines were properly and securely tied to grocery boxes; failing to comply with safety standards concerning taglines; failing to properly and securely tie the tagline onto the grocery box before it was placed on the deck of the Tami, or to take steps to ensure that it would remain tightly and securely attached once placed on the deck of the Tami and transported; and failing to properly inspect the tagline on the subject grocery box to ensure it was safely and properly tied before it was placed on the deck of the Tami.[26]

EPS argues that all negligence claims fail for the following reasons: there is no evidence that EPS owed a duty to Plaintiff; there is no evidence that EPS breached any duty it might have owed to Plaintiff; and the breach of any duty is a legal cause-in-fact of Plaintiff's injuries.[27] In its Reply in Support of Motion for Summary Judgment, EPS argues that because Plaintiff did not oppose EPS's Motion for Summary Judgment, the burden of proof to establish all necessary

---

[25] [Doc. No. 50]
[26] [Id. at pp. 4-5
[27] [Doc. No. 142-2, at p. 11]

elements of a negligence claim rests with BGOS.[28] In its Opposition to the Motion,[29] BGOS argues that material issues of fact remain because there is conflicting evidence as to what occurred during the time between the loading of the grocery box at the EPS facility and the unloading of the box onto the Tami.[30]

The Court agrees with BGOS that there remains an issue of material fact as to whether EPS acted negligently with respect to its handling of the tagline. EPS admits that it loaded the grocery box onto the BGOS vessel with the tagline attached, and there is no testimony demonstrating that the tagline was ever removed or replaced. While it could be hypothetically true that some intervening action occurred while the grocery box was being transported, EPS has provided no positive evidence to support such a conclusion. Additionally, there is conflicting testimony as to whether the tagline was improperly attached. Plaintiff testified that the tagline came loose because it was improperly attached to the side of the grocery box via a "loop" when it should have been attached to a "top corner pad eye" of the grocery box.[31] EPS employees, on the other hand, testify that no "loop" was tied and that they properly attached the tagline to the grocery box.[32] Accordingly, there still exists an issue of material fact as to whether EPS acted below the proper standard of care.

### i.  Did EPS Owe Plaintiff a Duty?

Even though the Court finds that there exists an issue of material fact as to whether EPS acted negligently, the Court must nonetheless examine whether EPS owed a duty to Plaintiff. EPS admits that Fieldwood's policies and procedures required taglines to be affixed to any cargo (such

---

[28] [Doc. No. 187]
[29] [Doc. No. 172]
[30] [Id. *referencing* Doc. No. 172-1 (Corporate Deposition of BGOS), at p. 4]
[31] [Doc. No. 172-2 (Deposition of Plaintiff), at pp. 4-7
[32] [Doc. Nos. 142-10; 142-16]

as the grocery box in question) being moved by a crane.[33] Additionally, EPS admits that it was its policy to "remove and replace any questionable taglines with a new tagline."[34] The requirement to attach a tagline to grocery boxes and the policy to replace defective taglines demonstrates that EPS owed a duty to Plaintiff to both provide a tagline and to provide one in a safe and reasonable manner. Accordingly, the Court finds that EPS owed a duty to Plaintiff and that there still exists a material issue of fact as to whether EPS violated that duty.

### III.    CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED, ADJUDGED, AND DECREED** that the Motion is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** to the extent that all of Third-Party Plaintiff's claims against Expeditors and Production Services Company ("EPS") set forth in the Amended Third-Party Complaint [Doc. No. 79] are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Motion is **DENIED** to the extent that EPS seeks summary judgment on the negligence claims against it set forth in the Amended Complaint [Doc. No. 50].

MONROE, LOUISIANA, this 18th day of November, 2022.

_____
Terry A. Doughty
United States District Judge

---

[33] [Doc. No. 142-2, p. 4]
[34] [Id.]