UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

JON WILLIS                                          CASE NO.  2:19-CV-00165

VERSUS                                              JUDGE TERRY A. DOUGHTY

BARRY GRAHAM OIL SERVICE L L C          MAGISTRATE JUDGE KAY

MEMORANDUM RULING

Pending before the Court are Cross Motions for Summary Judgment [Doc. Nos. 128 and 145] addressing the issue the issue of whether Third-Party Plaintiff Barry Graham Oil Service LLC ("BGOS") is entitled to contribution or indemnification from Third-Party Defendants Shamrock Management LLC ("Shamrock") and Aspen Insurance Ltd ("Aspen"). Oppositions [Doc. Nos. 148 and 164] and Replies [Doc. Nos. 181and 164] have been filed by the applicable parties.  For the reasons set forth herein, the Motion for Summary Judgment [Doc. No. 128] is **GRANTED**, and the claims against Shamrock and Aspen are **DISMISSED WITH PREJUDICE**, and the Motion for Summary Judgment [Doc. No. 145] is **DENIED**.

I.      BACKGROUND AND PROCEDURAL HISTORY

On February 8, 2019, Plaintiff Jon Willis ("Willis") filed suit in this Court on the basis of maritime jurisdiction under 28 U.S.C. § 1333(1) and diversity under 28 U.S.C. § 1332.[1] Willis claims he sustained personal injuries on February 10, 2018, on an offshore platform owned by BGOS.[2] On January 13, 2021, BGOS filed a Third-Party Complaint[3] and on August 3, 2021, filed an Amended Third-Party Complaint.[4] In the Amended Third-Party Complaint, BGOS named the

_____

[1] [Doc. Nos. 1 ("Original Complaint") and 50 ("First Amended Complaint")]
[2] [Doc. No. 50, ¶ 4]
[3] [Doc. No. 55]
[4] [Doc. No. 79]

following as Third-Party Defendants: (1) Wood Group, (2) Expeditors and Production Services Company ("EPS"), (3) Shamrock Management, LLC *doing business as* Shamrock Energy Solutions, and (4) Aspen Insurance LTD for and on behalf of Lloyd's Underwriter Syndicate No. 4711 ASP.[5]

The events leading up to the suit are as follows. The incident occurred while Willis was working on the deck of a supply vessel known as the M/V MS. TAMI ("the Tami"), owned by BGOS.[6] Fieldwood Energy ("Fieldwood") was the owner and operator of the fixed platform in the Gulf of Mexico known as the VR-261A platform ("the platform"). Willis was injured when a tagline came off of a grocery box as it was being lowered to the platform on which he was working off of the coast of Louisiana.[7] The facility was located in Block 261 of the Vermillion area on the Outer Continental Shelf ("OCS"), due south of the Louisiana coast.[8] At the time of the incident, the platform was manned by three people: Richard Broussard ("Broussard"), Patrick Cantrell ("Cantrell"), and Willis.[9] Cantrell operated the crane involved in the incident and was an employee of Wood Group.[10] Broussard was the designated person-in-charge ("PIC") on the facility and was employed by Fieldwood. Willis was a production operator and payroll employee of Shamrock.[11]

Willis contends that during a cargo transfer, a grocery box was being lowered from the Tami to the platform by Cantrell.[12] Willis grabbed the tag line and began to use the line to guide the box to its landing spot on the platform.[13] The tag line connected the grocery box to the crane,

---

[5] [Id. at ¶ 1]
[6] [Id. at ¶ 4]
[7] [Doc. No. 50]
[8] [Doc. Nos. 50, ¶¶ 3 and 4, 79, ¶ 3, and 134-5 ("Declaration of Patrick Cantrell")]
[9] [Doc. Nos 134-5, 134-6 ("Deposition of Richard Broussard")]
[10] [Id.]
[11] [Id.]
[12] [Doc. Nos. 50, 79, and 134-5]
[13] [Id.]

and the crane was located on the platform.[14] While using the tag line to guide the grocery box, the line came loose, and Willis fell onto the platform.[15] Willis contends that the fall resulted in personal injuries.

The parties in the suit and their relationship to one another can be described as follows. Fieldwood owned the platform on which the accident took place.[16] Fieldwood is not a party to the suit. The Tami is the vessel that was lowering the grocery box onto the platform when the accident occurred.[17] BGOS owned and chartered the Tami. BGOS's crew staffed and operated the Tami at the time of the accident.[18] Shamrock employed Willis at the time of the accident.[19] Fieldwood contracted with Shamrock through a Master Services Contract ("MSC").[20] Kilgore Marine Services, LLC ("Kilgore") and Fieldwood entered into a Master Time Charter ("MTC"), which requires Kilgore to provide chartered vessels to Fieldwood.[21] Kilgore brokered the Tami to BGOS through a Brokerage Agreement ("BA").[22] Kilgore is not a party to the suit.

There are three relevant contracts at play in instant motions. The BA is a contract dated March 1, 2014, between Kilgore (the Broker) and BGOS (the Operator).[23] Under the BA, Kilgore brokered the Tami to BGOS in the Gulf of Mexico to assist with getting workers and equipment to and from work sites.[24] The MSC is a contract effective November 1, 2013, between Fieldwood (as Company) and Shamrock (as Contractor).[25] Shamrock provided services on platforms owned

---

[14] [Doc. Nos. 134-5, 134-6, and 134-7]
[15] [Doc. Nos. 50, 79, and 134-5]
[16] [Doc. No. 1]
[17] [Id.]
[18] [Id.]
[19] [Doc. No. 128-6]
[20] [Doc. Nos. 128-3, 145-3]
[21] [Doc. No. 145-5]
[22] [Doc. Nos. 128-5, 145-4]
[23] [Id.]
[24] [Id.]
[25] [Doc. Nos. 128-3, 145-3]

by Fieldwood in the Gulf of Mexico. The Master Time Charter ("MTC") was dated January 1, 2014.[26] It is between Fieldwood (as Charterer) and Kilgore (as Owner).[27] There is no written contract between BGOS and Shamrock or Aspen.

BGOS contends that Shamrock and its insurer, Aspen, are responsible to BGOS for full defense, indemnity, and insurance coverage as a result of the injury to Willis. Shamrock and Aspen claim they are not. Both have filed cross motions for summary judgment addressing those claims.

## II.      LAW AND ANALYSIS

### A.  Standard of Review

Summary judgment is appropriate when the evidence before a court shows, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

 "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."  *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is unable to identify anything in

---

[26] [Doc. No. 145-5]
[27] [Id.]

the record to support its claim, summary judgment is appropriate. *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significant, summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co*., 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

### B.    Analysis

BGOS argues that certain provisions of the BA, MSC, and the MTC require Shamrock and Aspen to indemnify BGOS. BGOS maintains that it is entitled to full defense, indemnity, and insurance coverage from Shamrock and Aspen. Although it admits it does not have a contract with

Shamrock or Aspen, BGOS maintains that it is a third-party beneficiary under the term of the applicable contracts, which requires indemnification by Shamrock and Aspen. Shamrock/Aspen argue that BGOS is not a third-party beneficiary under any of the contracts. Alternatively, Shamrock and Aspen argue that the Longshore and Harbor Workers' Compensation Act ("LHWCA") prohibits an indemnity obligation to BGOS. To Shamrock and Aspen's alternative argument, BGOS contends that the Outer Continental Shelf Lands Act governs and applies Louisiana law as surrogate federal law. According to BGOS, because Louisiana law applies as surrogate federal laws, the LHWCA does not apply to void indemnity provisions in the contract.

### 1.     Applicable Law

This Court has previously held that Willis' claim arises under the Outer Continental Shelf Lands Act ("OCSLA"), and Louisiana State law applies as surrogate federal law.[28]   Under OCSLA's choice of law provisions, a three-part test determines whether state law applies:

> (1) The controversy must arise on a situs covered by OCSLA; (2) Federal maritime law must not apply of its own force; and (3) the state law must not be inconsistent with Federal law.

*Union Texas Petroleum Corp.*, 895 F.2d at 1047.  For the reasons stated in the Court's prior rulings, the controversy arises on a situs covered by OCSLA (on an artificial structure located in the Outer Continental Shelf of Louisiana), and federal maritime law does not apply of its own force.

The same reasoning in the previous ruling also applies in these cross-motions for summary judgment.  The only question is whether the state law is inconsistent with federal law (the third part of the three-part test).  Although it could be argued that Louisiana law, which allows third-party contractual claims, is inconsistent with the LHWCA, which does not allow such claims, the

---

[28] *See* [Doc. Nos. 204 and 206]

Fifth Circuit has held that the scope of third-party liability, as well as defenses to it, is not inconsistent with federal law.  *Fontenot v. Dual Drilling Co.,* 179 F.3d 969 (5th Cir. 1999).

Therefore, the Court finds the LHWCA does not apply to void any indemnity provisions in the applicable contracts.  The specific contracts will therefore be analyzed to determine whether they provide indemnity rights to BGOS as a third-party beneficiary.

### 2.    Contractual Interpretation

As previously noted, there is no contract between Shamrock/Aspen and BGOS.  BGOS relies on the BA, MSC, and MTC to impose an obligation on Shamrock/Aspen as a third-party beneficiary.  To become a third-party beneficiary, BGOS argues that Shamrock was a contractor to Fieldwood pursuant to the MSC; there was a BA between BGOS and Kilgore; and there was a MTC between Kilgore and Fieldwood.  BGOS further argues that pursuant to identical cross indemnity and insurance terms in MSC and MTC, Shamrock agreed to indemnify and defend BGOS from injury claims made by Shamrock employees.  BGOS further argues that under the Louisiana Oilfield Anti-Indemnity Act ("LOIA"), Fieldwood paid insurance premiums directly to Shamrock to extend all of Shamrock's insurance policies to include and provide coverage for Shamrock's indemnity obligations under the MSC.

Shamrock/Aspen maintain that the MSC does not extend any third-party beneficiary obligations to BGOS because BGOS is not a member of the "Company Group," is not an "invitee," and the "Third-Party Contractor Group" is not included in the pertinent indemnity and insurance provisions of the contract.  Also, Shamrock/Aspen argue BGOS did not assume the required reciprocal cross-indemnification to Shamrock and cannot take advantage of the insurance premium paid by Fieldwood which was not made in BGOS's name.

### i.       The Contractual Agreements

The BA is between Kilgore and BGOS.  Under the BA, Kilgore brokered the Tami to

BGOS in the Gulf of Mexico to assist with transporting workers and equipment to and from work

sites. The pertinent language in the BA reads as follows:

> It is understood that in consideration of procuring work for
> Operator's [BGOS's] vessel, Charterer may require that a Master
> Time Charter or similar charter be in place between Broker
> [Kilgore] and Charterer, and that the charter of Operator's [BGOS's]
> vessel will be controlled by Time Charter.  Operator [BGOS] agrees
> to assume any and all obligations which Broker [Kilgore] has
> assumed in any such Time Charter including, but not limited to, all
> defense and indemnity and insurance procurement obligations.[29]

The MSC is between Fieldwood (Company) and Shamrock (Contractor).  Shamrock

provided services on platforms owned by Fieldwood in the Gulf of Mexico.  Provision 13(a)(ii)

defines "Company Group" as follows:

> "Company Group" shall mean Company [Fieldwood] and its parent,
> affiliates and subsidiary companies, co-lessees, co-owners, partners,
> joint venturers, together with its and all of their respective officers,
> directors, employees, in-house legal counsel, agents,
> representatives, insurers and invitees and the respective successors,
> spouses, relatives, dependents, heirs, and estate of any of the
> foregoing.[30]

Provision 13(a)(iii) defines "Contractor Group" as follows:

> (iii) "Contractor Group" shall mean Contractor [Shamrock] and its
> parent, affiliates, and subsidiary companies, its, and their respective
> subcontractors of any tier, together with its and all of their respective
> officers, directors, employees, in-house legal counsel, agents,
> representatives, insurers and invitees and the respective successors,
> spouses, relatives, dependents, heirs, and estate of any of the
> foregoing.[31]

---

[29] [Doc. Nos. 128-5, 145-4]
[30] [Doc. Nos. 128-3, 145-3]
[31] [Id.]

The MSC includes defense and indemnity obligations as between Fieldwood and Shamrock whereby each must defend and indemnify the other against any claims brought by a member of its respective group.  Provision 13(b) reads as follows:

> **(b)    GENERAL INDEMNITIES BETWEEN COMPANY AND CONTRACTOR.**
>
> **(i) CONTRACTOR HEREBY AGREES TO RELEASE, INDEMNIFY, PROTECT, DEFEND AND HOLD HARMLESS COMPANY GROUP FROM AND AGAINST ANY AND ALL CLAIMS FOR (1) THE INJURY, ILLNESS OR DEATH OF ANY MEMBER OF CONTRACTOR GROUP…WITHOUT REGARD TO WHETHER ANY SUCH CLAIM IS CAUSED, IN WHOLE OR IN PART, BY THE NEGLIGENCE (WHETHER SOLE, JOINT OR CONCURRENT; ACTIVE OR PASSIVE), STRICT LIABILITY, STATUTORY LIABILITY, CONTRACTUAL LIABILITYOR OTHER FAULT (EXCLUDING ONLY THE GROSS NEGLIGENCE AND INTENTIONAL MISCONDUCT) OF ANY MEMBER OF THE COMPANY GROUP OR BY ANY DEFECT OR PRE-EXISTING CONDITION (WHETHER KNOWN OR UNKNOWN; PATENT, LATENT OR OTHERWISE),**
>
> **(ii) COMPANY HEREBY AGREES TO RELEASE, INDEMNIFY, PROTECT, DEFEND AND HOLD HARMLESS CONTRACTOR GROUP FROM AND AGAINST ANY AND ALL CLAIMS FOR (1) THE INJURY, ILLNESS OR DEATH OF ANY MEMBER OF COMPANY GROUP…. WITHOUT REGARD TO WHETHER ANY SUCH CLAIM IS CAUSED, IN WHOLE OR IN PART, BY THE NEGLIGENCE (WHETHER SOLE, JOING OR CONCURRENT, ACTIVE, OR PASSIVE), STRICT LIABILITY, STATUTORY LIABILITY, CONTRACTUAL LIABILITY OR OTHER FAULT (EXCLUDING ONLY THE GROSS NEGLIGENCE AND INTENTIONAL MISCONDUCT) OF ANY MEMBER OF THE CONTRACTOR GROUP OR BY ANY DEFECT OR PRE-EXISTING CONDITION (WHETHER KNOWN OR UNKNOWN; PATENT, LATENT OR OTHERWISE).**[32]

The MSC imposes additional indemnity obligations upon Shamrock for Third-Party Contractors of Fieldwood who have executed cross indemnification and waivers that are

---

[32] [Id.]

substantially similar to those in the MSC. Provision 13(a)(v) defines "Third-Party Contractor" as

follows:

> (v) "Third-Party Contractor" shall mean any other contractor (other than any member of Contractor Group) used or employed by Company [Fieldwood] in connection with the Work.[33]

Provision 13(a)(vi) defines "Third-Party Contractor Group" as follows:

> (vi) "Third-Party Contractor Group" shall mean Third-Party Contractor and its parent, affiliates, and subsidiary companies, its, and their respective subcontractors of any tier, together with its and all of their respective officers, directors, employees… insurers…[34]

Provision 13(f) of the Master Services Contract provides as follows:

> **(c).   CROSS INDEMNITIES BETWEEN CONTRACTOR AND COMPANY'S OTHER (CONTRACTORS).**
>
> **(i) TO THE EXTENT COMPANY'S [Fieldwood's] THIRD-PARTY CONTRACTORS EXECUTE CROSS INDEMNIFICATION AND WAIVERS SUBSTANTIALLY SIMILAR TO THOSE CONTAINED IN THIS SECTION 13(f), CONTRACTOR [Shamrock] HEREBY AGREES TO RELEASE, INDEMNIFY, PROTECT, DEFEND AND HOLD HARMLESS SUCH OTHER THIRD-PARTY CONTRACTOR(S) (AND ANY SUCH THIRD-PARTY CONTRACTOR GROUP) FROM AND AGAINST ANY AND ALL CLAIMS FOR (1) THE INJURY, ILLNESS OR DEATH OF ANY MEMBER OF CONTRCTOR GROUP… WITHOUT REGARD TO WHETHER ANY SUCH CLAIM IS CAUSED, IN WHOLE OR IN PART, BY THE NEGLIGENCE (WHETHER SOLE, JOINT OR CONCURENT; ACTIVE OR PASSIVE). STRICT LIABILITY, STATUTORY LIABILITY, CONTRACTUAL LIABILITY OR OTHER FAULT (EXCLUDING ONLY THE GROSS NEGLIGENCE AND INTENTIONAL MISCONDUCT) OF ANY MEMBER OF THE THIRD-PARTY CONTRACTOR GROUP OR BY ANY DEFECT OR PRE-EXISTING CONDITION (WHETHER KNOWN OR UNKNOWN; PATENT, LATENT OR OTHERWISE).**

---

[33] [Id.]
[34] [Id.]

**(ii)  Contractor [Shamrock] agrees that it will support its mutual indemnity obligations of this Section 13(f) with insurance with the minimum limits not less than those set forth in Section 14 obtained for the benefit of such Third-Party Contractor(s) (and any such Third-Party Contractor Group) bet such minimum insurance requirements shall not limit Contractor's indemnity obligations except to the extend mandated by law.**

**(iii)  The Parties intend to create a third-party beneficiary obligation of Contractor [Shamrock] in favor of such other Third-Party Contractor(s) (and say such Third-Party Contractor Group) [BGOS] that have included reciprocal cross indemnity, insurance support and waiver provisions is their respective contracts with Company [Fieldwood] (and to extend such third-party beneficiary obligations of Contractor to such other Third-party Contractor Groups).[35]**

The MTC was between Fieldwood (as Charterer) and Kilgore (as Owner).  The MTC requires Kilgore to provide chartered vessels from time to time to Fieldwood.  The MTC defines "Charterer Group" in Provision 12(a)(ii) as:

> Charterer and its parent, affiliates and subsidiary companies, co-lessees, co-owners, partners, joint venturers, together with its and all of their respective officers, directors, employees, in-house legal counsel, agents, representatives, insurers, and invitees of all the foregoing and the respective successors, spouses, relatives, dependents, heirs, and estate of any of the foregoing.[36]

The Master Time Charter defines "Owner Group" in Provision 12(a)(ii) as:

> Owner and its parent, affiliates and subsidiary companies, the vessel and its owners and operators, and its and their respective subcontractors of any tier, together with its and all of their respective officers, directors, employees, masters, operators, crew members and house legal counsel, agents, representatives, insurers and invitees and the respective successors, spouses, relatives, dependents, heirs, and estate of any of the foregoing.[37]

---

[35] [Id.]
[36] [Doc. No. 145-5]
[37] [Id.]

The MTC further defines "Third-party Contractor" in Provision 12(a)(v) as "… any other contractor or subcontractor of any tier (other than any member of Owner Group) used or employed by Charterer to provide equipment or services to Charterer."[38] Provision 12(g) of the MTC provides in pertinent part:

> **g.  CROSS  INDEMNITIES  BETWEEN  OWNER  AND CHARTERER'S OTHER THIRD-PARTY CONTRACTORS**
>
> **(g)  TO  THE  EXTENT  CHARTERER'S  THIRD-PARTY CONTRACTORS  EXECUTE  CROSS  INDEMNIFICATION AND WAIVERS SUBSTANTIALLY SIMILAR TO THOSE CONTAINED IN THIS SECTION 12(f), OWNER [Kilgore] HEREBY AGREES TO RELEASE, INDEMNIFY, PROTECT, DEFEND AND HOLD HARMLESS SUCH OTHER THIRD-PARTY CONTRACTORS (AND ANY SUCH THIRD- PARTY CONTRACTOR GROUP) FROM AND AGAINST ANY AND ALL CLAIMS FOR (1) THE INJURY, ILLNESS OR DEATH OF ANY MEMBER OF OWNER GROUP…"[39]**

BGOS argues that the cross indemnities provisions in the Shamrock-Fieldwood MSC are triggered and require Shamrock to indemnify and provide insurance to BGOS as part of the Third-Party Contractor Group.  This contractual dispute can be resolved because BGOS is not a member of the "Company Group" or "Contractor Group" under the provisions of Section 13 of the Fieldwood-Shamrock MSC because the language of Section 13 does not include other contractors or subcontractors, and because BGOS is not a "subcontractor of any tier" as to Shamrock. BGOS cannot fit under any other category except possibly as an "invitee."  However, a vessel that was simply laying adjacent to a platform is not considered to be an "invitee." *See Knox v. Rec. Marine Logistics, LLC*, 716 Fed. Appx. 370 (5th Cir. 2018).

---

[38] [Id.]
[39] [Id.]

In Section 13b(i) of the MSC, Shamrock only agreed to release, indemnify, protect, defend, and hold harmless "Company Group." Because BGOS is not a member of the "Company Group," the rest of BGOS's argument falls apart.

Additionally, BGOS is not a member of the Third-Party Contractor Group to be indemnified pursuant to Section 13f of the MSC. A "Third-Party Contractor" is any other contractor (other than any member of the Contract Group) used or employed by Fieldwood in connection with the work. The "Third-Party Contractor Group" includes Third-Party Contractors and their parent, affiliates, and subsidiary companies and their respective "subcontractors of any tier."[40]

There is no contractual relationship between Fieldwood and BGOS, so BGOS cannot be a "subcontractor" of Fieldwood to be a member of the Third-Party Contract Group. Because BGOS is not a member of the Third-Party Contractor Group or the Company Group, BGOS has no contractual grounds to seek indemnification, defense, or insurance coverage from Shamrock or Aspen.

### III.   CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED, ADJUDGED, AND DECREED** that the Motion for Summary Judgment [Doc. No. 128] filed by Shamrock and Aspen is **GRANTED**, and that all claims by BGOS against Shamrock and Aspen are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment [Doc. No. 145] filed by BGOS is **DENIED**.

---

[40] [Doc. Nos. 128-3, 145-3]

MONROE, LOUISIANA this 5th day of January 2023

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**