UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **JON WILLIS** | **CASE NO. 2:19-CV-00165** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **BARRY GRAHAM OIL SERVICE LLC** | **MAG. JUDGE KATHLEEN KAY** |

## MEMORANDUM RULING

Pending before the Court is a Motion in Limine to Exclude Testimony of Dr. David L. Weir [Doc. No. 166] filed by Shamrock Management LLC d/b/a Shamrock Energy Solutions ("Shamrock"). Plaintiff Jon Willis ("Willis") filed an Opposition [Doc. No. 239].

For the reasons set forth herein, Shamrock's Motion in Limine is **DENIED**.

### I. BACKGROUND

On February 10, 2018, Willis, an employee of Shamrock, was allegedly injured while working as a platform operator on a Fieldwood platform off the coast of Louisiana in the Gulf of Mexico. Willis allegedly lost his footing after a tagline he was holding slipped from cargo being offloaded from the MS TAMI ship, causing Willis to land on his backside on the platform deck.

In Shamrock's Motion in Limine, Shamrock seeks to prohibit Plaintiff's expert Dr. David L. Weir from testifying pursuant to Federal Rules of Evidence 702 and 703.

### II. APPLICABLE LAW

FRE 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable

1

> principles and methods, and (d) the expert has reliably applied the principles and methods to the facts of the case.

District courts function as gatekeepers and should permit only reliable and relevant expert testimony to be presented to the trier of fact. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588 (1993). A court has great discretion concerning the admissibility and relevancy of evidence and has wide latitude to determine whether an expert has the competence, background, and experience to qualify. *Echeverry v. Jazz Casino Co.*, 998 F.3d 221, 235 (5th Cir. 2021).

A court's role as gatekeeper does not replace the traditional adversary system and a review of the case law. Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attaching shady but admissible evidence. *Vallecillo v. McDermott, Inc.*, 576 F. Supp. 3d 420, 424 (W.D. La. 2021). Additionally, challenges to the bases and sources of an expert's opinion affect the weight to be given to that opinion, not its admissibility. *Puga v. RCX Sols, Inc.*, 922 F.3d 285, 294 (5th Cir. 2019). If the evidence and facts of a particular case are such that a lay person can understand them without an expert's assistance, then the use of expert testimony is not only unnecessary and unhelpful, it actually invades the domain of common sense matters upon which jurors require no expert assistance. *United States v. Johnson*, 575 F.2d 1347, 1361 (5th Cir. 1978).

Admission of expert testimony is proper where: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Bittle v. Cain*, 2015 WL 1311216, at *5 (ED. La., Mar. 23, 2015).

Rule 703 focuses on the data underlying the expert's opinion. *In re TMI Litigation*, 193 F.3d 613, 697 (3rd Cir. 1999). As part of its gatekeeper role, a district court must ensure that the underlying facts or data upon which a proffered expert's opinion is based are themselves reliable. If an expert's opinion is based on unreliable facts, the opinion must be excluded. *See In re TMI Litigation*, 193 F.3d at 697; *Montgomery County v. Microvote Corp.*, 320 F.3d 440, 448 (3rd Cir. 2003). "Rule 703's reliability standard is similar to Rule 702's reliability requirement, i.e., 'there must be good grounds on which to find the data reliable.'" *In re TMI Litigation*, 193 F.3d at 697 (internal citations omitted). Further, for every conclusion contained in an expert's report, a court must determine if the methodology leading to that conclusion is reliable. *Allen v. Pennsylvania Eng'g Corp.*, 102 F.3d 194, 196 (5th Cir. 1996). A court may appropriately exclude expert testimony when it finds that an expert has extrapolated data, and there is "too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 279 (5th Cir. 1998). Such testimony should also be excluded when it is speculative or not amenable to scientific verification. *Moore*, 151 F.3d at 273. "Expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006).

Shamrock's motion argues that Weir's expert opinions are inadmissible because his conclusions lack the required scientific validity.[1] Thus, Shamrock requests that any opinion by Dr. Weir regarding Willis's alleged traumatic brain injury ("TBI") and treatment thereof be excluded.[2]

---

[1] [Doc. No. 166-2 at p.1].
[2] [Id.].

### III. DR. WEIR'S REPORT AND OPINIONS

According to Shamrock, Dr. Weir's expert opinions were given in the form of a narrative report "in response to Plaintiff's counsel's correspondence."[3] Dr. Weir diagnosed Willis with post-concussive headaches and cognitive impairment due to the alleged incident.[4] Dr. Weir opined that Willis would need lifetime treatment for his headaches, primarily through the use of Botox injections.[5]

To reach his conclusions, Dr. Weir ordered an MRI of Willis's brain and reviewed diffusion tension imaging ("DTI").[6] DTI imaging was recently summarized by this Court as follows:

> DTI measures the direction of movement or flow (known as diffusion) of water molecules through tissue. Water moves through damaged tissue at different rates and in different directions than it does [in] healthy tissue. DTI is based upon the basic physics of the flow of water. With no barriers to flow, water will move in isotropic distribution, which means it will move equally in all directions. If there are barriers to flow, it will move anisotropically or unequally in all directions like a perforated sprinkler-hose. As the water molecules flow through brain tissue, the water molecules follow the nerve fibers, and so by reconstructing these trajectories, DTI can image the nerve fibers.

*Andrew v. Patterson Motor Freight, Inc.*, No. 6:13CV814, 2014 WL 5449732, at * 7 (W.D. La. 2014) (internal quotations omitted). According to Dr. Weir's report, "[t]he MRI with DTI performed on Mr. Willis revealed that he had six regions of his brain that tested abnormally for high FA values."[7] Ultimately, Dr. Weir concluded that Willis had "post-concussive syndrome and personality change."[8]

---

[3] [Id. at p.2].
[4] [Id.].
[5] [Id.].
[6] [Doc. No. 239 at p.6].
[7] [Id. at p.7 (*citing* Exhibit 1, Doctors' Imaging records, p.3 of 33)].
[8] [Id. at p.8].

After making his diagnosis, Dr. Weir proceeded to treat Willis for his TBI starting in June of 2018.[9] Several proposed drug treatments failed to help Willis, so Dr. Weir ultimately began Botox injections in August of 2019, and according to Dr. Weir, this provided immediate relief to Willis.[10] He thus continued to use Botox on his patient.[11]

### IV. ANALYSIS

In its Motion for Limine, Shamrock first argues that DTI imaging used by Dr. Weir is "faulty medical methodology."[12] Shamrock points to the Neurology Examination performed by Dr. Archie Melcher, which states that "abnormalities on DTI are defined on the basis of comparison with a control group, because universal thresholds for abnormality have not been established."[13] Further, Shamrock notes that Dr. Melcher, "an independent examining physician," found many other possible causes for headaches like those Willis suffers from and stated that chronic post-traumatic headaches are rare according to current medical literature.[14] Overall, Shamrock asserts that Dr. Weir could not have come to his conclusion regarding the treatment of Willis's headaches based on clinical history alone, and DTI imaging does not reinforce his opinions.[15] Thus, Shamrock urges this Court to preclude Dr. Weir from testifying "on whether the medical evidence supports a diagnosis of Mr. Willis having sustained a TBI/post-concussion syndrome related to his February 10, 2018 accident" and "whether [DTI imaging] has any bearing on the diagnosis of TBI/post-concussion syndrome."[16]

---

[9] [Id.].
[10] [Id.].
[11] [Id.].
[12] [Doc. No. 166-2 at p.4].
[13] [Id. (*quoting* Exhibit 2, Report of Dr. Archie Melcher, p.16)].
[14] [Id.].
[15] [Id. at p.5].
[16] [Id. at p.6].

5

In response, Willis notes that "[a]n unbroken string of Louisiana federal courts (and state courts) has ruled that DTI is reliable and admissible."[17] Willis also points to an article published in 2013 that states "DTI has been studied extensively as a tool for identification of brain abnormalities related to TBI," and "[d]uring the past decade, the number of studies has risen exponentially and continues to increase with no sign of abatement."[18] Further, Willis points out that Dr. Melcher, upon whom Shamrock relies in contesting Dr. Weir's opinions, has stated under oath that he has no training in DTI, is not an expert in its use, and recognizes that other neurologists may have differing opinions.[19] Finally, Willis notes that Dr. Weir's opinions are "based *not only* upon the DTI, but upon a *host* of clinical symptoms and testing performed upon Mr. Willis."[20] Thus, Willis argues that his treating physician should be allowed to testify.

This Court agrees with Willis that DTI imaging is not so unreliable that Dr. Weir should be prevented from presenting his opinions regarding Willis's TBI. Further, the Court agrees with Willis that Dr. Weir did not base his opinion solely on DTI imaging, but rather on a combination of information. Cross-examination and other techniques are better suited to challenging this expert and his opinions. Thus, the Court finds that Dr. Weir's opinions satisfy the *Daubert* standard, and Dr. Weir may testify regarding Willis's TBI and the DTI imaging used to reach the diagnosis.

In its Motion in Limine, Shamrock also argues that Dr. Weir's proposed use of Botox treatments is unsupported by science.[21] Shamrock points to a Louisiana state court case, *Petry v. Safety National Casualty*, in which the court held that Dr. Weir's "opinions on Botox

---

[17] [Doc. No. 239 at p.1 (*citing Andrew v. Patterson Motor Freight, Inc.*, No. 6:13CV814, 2014 WL 5449732, at *8 (W.D. La. 2014); *Barnett v. National Continental Insurance Company*, No. 3:17-CV-153-JWD-EWD, 2019 WL 126732, at *6 (M.D. La. 2019); *Lance Meadors v. D'Agostino*, No. CV 18-01007-BAJ-EWD, 2020 WL 6342637, at *4–5 (M.D. La. 2019); *Hernandez v. Scales*, 2021-1366 (La. App. 1st Cir. 12/15/21), 2021 WL 5919059, at *1].
[18] [Id. at p.2 (*quoting* Exhibit 2, Hulkower, M.B, "A Decade of DTI in Traumatic Brain Injury: 10 Years and 100 Articles Later" at p.2071)].
[19] [Id. at p.2–3].
[20] [Id. at p.3] (emphasis in original).
[21] [Doc. No. 166-2 at p.5].

administration for lifelong headaches were excluded since there was no medical literature to support the administration of Botox for headaches beyond the two year mark."[22] In *Petry*, Dr. Weir based his reliance on the administration of Botox on "his own anecdotal medical experience," which was insufficient in the eyes of the court to establish sound methodology.[23] Thus, Shamrock urges this Court to preclude Dr. Weir from testifying to "his opinion that any treatment of Mr. Willis's alleged TBI/post-concussion syndrome should consist of lifelong treatment with Botox injections."[24]

In response, Willis argues that, because Dr. Weir is a treating physician, "there is no requirement that [his] opinions be supported with peer-reviewed research or articles as long as they are based on adequate education, training, experience and reasoned medical analysis."[25] Willis points out that Dr. Weir is a board-certified neurologist, a fact that Shamrock does not—and cannot—contest.[26] Further, Willis argues that Botox injections are FDA-approved to treat headaches, and Dr. Weir has personally treated hundreds of his own patients in this manner.[27] Willis himself has already received these treatments for approximately three years, and Dr. Weir opines that Willis substantially benefits from this treatment.[28]

This Court agrees with Willis's argument that Dr. Weir, as Willis's treating physician, can testify as to the Botox injections that Willis has received for the past three years to treat his headaches. While Shamrock points to the *Petry* case to argue that Dr. Weir's opinions have previously been precluded, Willis is equally able to point to cases in which Dr. Weir's same

---

[22] [Id. (*citing* 16th JDC St. Martin Parish LA, Docket 85502-E)].
[23] [Id. at p.5–6].
[24] [Id. at p.6].
[25] [Doc. No. 239 at p.3 (*quoting Salgado v. Electric Ins. Co.*, NO. 18-522-JWD-EWD, 2020 WL 6370992, at *9 (M.D. La. 2020)].
[26] [Id. at p.4].
[27] [Id.].
[28] [Id.].

7

opinions have been allowed.[29] This Court therefore finds that Dr. Weir may testify as to the treatment that he has prescribed to Willis and the effects of those treatments.

## V.  CONCLUSION

For the reasons set forth herein, Shamrock's Motion in Limine to Exclude Testimony of Dr. David L. Weir [Doc. No. 166] is **DENIED**.

MONROE, LOUISIANA, this 29th day of March, 2023.

_____
Terry A. Doughty
United States District Judge

---

[29] *See* [Id. at p.5].