UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **JON WILLIS** | **CASE NO. 2:19-CV-00165** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **BARRY GRAHAM OIL SERVICE L L C** | **MAGISTRATE JUDGE LEBLANC** |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment [Doc. No. 279] filed by Third-Party Defendant, Aspen Managing Agency Limited on behalf of Aspen Syndicate 4711 at Lloyd's ("Aspen"). Third-Party Plaintiff, Barry Graham Oil Service, LLC ("BGOS"), filed a Response in Opposition [Doc. No. 283]. Aspen then filed a Reply [Doc. No. 284].

For the reasons set forth, Aspen's Motion is **GRANTED**.

I.  **Background**

This case was originally brought after the original Plaintiff Jon Willis ("Willis") was injured while working as a platform operator on a Fieldwood Energy LLC ("Fieldwood") platform over the Outer Continental Shelf.[1] Willis sustained these injuries while assisting with the unloading of a watercraft.[2] The watercraft being unloaded at the time of the accident, the MV MS TAMI ("MS TAMI"), was owned and operated by BGOS, and was rented or loaned to Fieldwood under a charter agreement.[3] BGOS, the owner of and operator of the vessel, was named as a

---

[1] [Doc. No. 279-5, p. 2].
[2] [Id.].
[3] [Id.].

1

defendant.[4] BGOS ultimately settled with Willis in September of 2023.[5] BGOS now seeks to recover the settlement amount and defense costs from Shamrock Management LLC ("Shamrock") and its insurer, Aspen, via a Third-Party Demand.[6] BGOS asserts coverage under the Aspen Commercial General Liability ("CGL") and Excess Liability Policies issued to Shamrock, arguing that it qualifies as an additional insured and/or that the claim is covered by Shamrock's indemnity obligations under a separate Master Service Contract ("MSC").[7] Aspen filed this Motion for Summary Judgment, arguing that the Watercraft Exclusion is clear, explicit, and unambiguously applies, and therefore, Aspen is not liable for BGOS's settlement amount and defense costs.[8]

The issues have been briefed, and the Court is prepared to rule.

## II. Law and Analysis

### A. Standard of Review

A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant meets their initial burden of showing no genuine issue of material fact, "the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d

---

[4] [Id. at p. 5].
[5] [Id. at p. 6].
[6] [Id. at p. 7].
[7] [Doc. No. 283, p. 1].
[8] [Doc. No. 279-5, p. 12].

703, 706 (5th Cir. 2013) (citation modified). A fact is "material" when proof of its existence or nonexistence would affect the lawsuit's outcome under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgement." *Id*. at 247–48. And a dispute about a material fact is "genuine" only if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). But summary judgment is appropriate when the evidence is "merely colorable or is not significantly probative." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (citation modified).

Moreover, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation modified). Courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).

Finally—and importantly—there can be no genuine dispute as to a material fact when a party "fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof of trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Under Louisiana law, which applies in this case, interpreting insurance contracts is a legal question. *Maldonado v. Kiewit Louisiana Co.*, 146 So. 3d 210, 218 (La. Ct. App. 2014). When construing insurance policies, Louisiana courts apply the general rules of contract interpretation, prescribed in the Louisiana Civil Code. *Bayou Steel Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 642 F.3d 506, 510 (5th Cir. 2011) (citations omitted). A policy's words and phrases are given their plain, ordinary, and generally prevailing meanings, unless they have acquired some technical meaning. *Id.* (citing LA. CIV. CODE ANN. art. 2047 (2025)). Only if the words of a policy are not clear and explicit or lead to absurd consequences, may the interpreting court seek to determine the common intent of contracting parties. *Id.* (citing LA. CIV. CODE ANN. arts. 2045–46 (2025)). And exclusionary provisions in policies are "strictly construed against the insurer." *Id.* (quoting *Calogero v. Safeway Ins. Co. of La.*, 753 So.2d 170, 173 (La. 2000)).

### B. Watercraft Exclusion

Aspen argues that the Watercraft Exclusion applies and therefore BGOS is not entitled to the coverage as an insured.[9] BGOS, however, argues that "for the Watercraft Exclusion to apply, then, Aspen must unambiguously establish that the "bodily injury" at issue in this case arose out of the ownership, maintenance, use or entrustment to others of any vessel owners or operated by or rented or loaned to any

---

[9] [Id. at p. 13].

insured."[10] The Aspen Policy contains a Watercraft Exclusion that bars coverage for liabilities associated with vessels. The exclusion states, in relevant part, that the policy does not apply to:

> Bodily injury or Property Damage arising out of the ownership, maintenance, use or entrustment to others of any watercraft owned, operated, or rented by or loaned to any insured. Use includes operation and 'loading or unloading.[11]

The undisputed facts demonstrate that the injury to Willis arose directly from the ownership, operation, and use of the MS TAMI, a watercraft owned by BGOS. BGOS's liability, for which it seeks indemnity, is solely predicated on its relationship to and actions involving the vessel. The causal link falls squarely within the plain language of the Watercraft Exclusion. Accordingly, the exclusion acts to bar coverage for BGOS's claims against Aspen.

### C.   The "Insured Contract" Exception

BGOS argues in its opposition that even if the Watercraft Exclusion applies, coverage is restored because BGOS's liability falls under the "insured contract" exception to the exclusion.[12] Aspen argues that this exception usually modifies the exclusion to restore coverage for liability assumed by the insured party, in this case, Shamrock, in an "insured contract."[13]

However, the specific language of the exception to the Watercraft Exclusion in the Aspen Policy is restrictive. It provides that the exclusion does not apply to liability

---

[10] [Doc. No. 283, p. 10].
[11] [Doc. No. 279-1, p. 15].
[12] [Doc. No. 283, p. 12].
[13] [Doc. No. 284, p. 10].

5

assumed in an "insured contract" that is for the: "ownership, maintenance or use of the particular watercraft."[14] BGOS correctly asserts that the MSC between Shamrock and Fieldwood (under which BGOS was designated an additional insured) is an "insured contract." However, this contract did not pertain to the MS TAMI. The record is clear, and BGOS essentially concedes in its briefs, that Shamrock did not enter into a contract for the ownership, maintenance, or use of the MS TAMI.

Therefore, the condition necessary to trigger the exception—a contractual assumption of liability related to the specific watercraft—is not met. The MSC, which contemplates indemnity for offshore work generally, is insufficient to override the highly specific Watercraft Exclusion and its limited exception. To accept BGOS's argument would render the clear language regarding the "particular watercraft" meaningless, which this Court cannot do.

Thus, the clear and unambiguous language of the Watercraft Exclusion eliminates coverage for liability arising out of the ownership, operation, or use of the MS TAMI. And the narrow "insured contract" exception to the Watercraft Exclusion is inapplicable because the underlying MSC was not one for the ownership, maintenance, or use of the specific vessel involved in Willis' injury.

Because the undisputed facts confirm that coverage is excluded as a matter of law, Aspen is entitled to summary judgment.

### III.   Conclusion

For the reasons stated above,

---

[14] [Doc. No. 279-1, p. 15].

**IT IS ORDERED, ADJUDGED, AND DECREED** that Aspen's Motion for Summary Judgment [Doc. No. 279] is **GRANTED** and Third-Party Plaintiff's claims against Aspen are **DISMISSED WITH PREJUDICE**.

**MONROE**, **LOUISIANA**, this 6th day of November 2025.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE